UNITED STATES, Appellee

v.

JOHN R. McVEY, Private E-1, U. S. Army, Appellant

4 USCMA 167, 15 CMR 167

No. 2682

Decided April 16, 1954

Lt Col James C. Hamilton, U. S. Army, and 1st Lt Jack W. Tucker, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, 1st Lt Donald M. Sukloff, U. S. Army, and 1st Lt Ezra B. Jones, Jr., U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

Upon joint trial by a general court-martial, accused was found guilty of robbery in violation of Article 122, Uniform Code of Military Justice, 50 USC § 716, and assault with a dangerous weapon in violation of Article 128, Uniform Code of Military Justice, 50 USC § 722. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for five years. Following approval of the findings and sentence by intermediate reviewing authorities, we granted review to determine whether the law officer erred in his instruction as to the maximum sentence imposable under the findings.

On July 27, 1952, at about 10:30 p.m. in Tokyo, Japan, the accused, Private Patrick J. Coughlin (a joint accused at trial), and Coughlin's Japanese girl friend, hailed a taxicab driven by Sohji Ogino, a Japanese National. After driving around for some time, they had the driver stop the vehicle, whereupon accused McVey attempted to strangle Ogino, using Coughlin's belt as a means to this end. After a short struggle Ogino broke loose. As he was departing, he was struck over the head with a wooden club which Coughlin had picked up before the threesome entered the cab. Fearing that his life was in danger, Mr. Ogino continued his flight on foot, leaving behind his taxicab and some eight hundred yen in Japanese currency.

McVey, Coughlin, and the Japanese girl then drove off in the cab with accused McVey at the wheel. Some time later that evening, the cab was found abandoned and Ogino's money was missing.

After findings of guilty as to each specification had been returned, the law officer informed the court-martial members that the maximum sentence imposable included thirteen years of confinement. This period represents the sum of the maximum sentence for both robbery and assault with a dangerous weapon. Manual for Courts-Martial, United States, 1951, paragraph 127c, pages 223–224. If these two offenses were separate in this case, the law officer's advice was correct. If not, he erred, and the cause must be returned to a board of review as prejudice is apparent.

The present Manual rule concerning the charging of several offenses arising out of the same act or transaction is as follows:

"*Offenses arising out of the same act or transaction.*—The accused may be found guilty of two or more offenses arising out of the same act or transaction, without regard to whether the offenses are separate. In this connection, however, see 76a(8)." [Manual for Courts-Martial, supra, paragraph 74b(4), page 116.]

Therefore, regardless of our ultimate conclusion here, the allegation of several offenses in this case was proper. However, another Manual provision is more important. The Manual for Courts-Martial, supra, paragraph 76a (8), page 123, limits the preceding quotation by providing:

"The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. The test to be applied in determining whether the offenses of which the accused has been convicted are separate is this: The offenses are separate if each offense requires proof of an element not required to prove the other. . . . An accused may not be punished for both a principal offense and for an offense included therein. . . ."

The principles set forth brought about a material change in the rules followed by the various services. According to the comments found in Legal and Legislative Basis, Manual for

**169**

Courts-Martial, United States, 1951, page 78, the change was made so that the rule adopted by the Federal courts might be considered as a precedent. In United States v. Larney, 2 USCMA 563, 10 CMR 61, we sought to follow the rule of Blockburger v. United States, 284 US 299, 76 L ed 306, 52 S Ct 180 (1932). However, because of the difficulty of applying the necessarily abstract language of the Manual, supra, to various factual situations, we believe an extended consideration of what we consider appropriate Federal decisions will serve to clarify our position.

An analysis of the holdings of the Supreme Court reveals that it has steadfastly adhered to but one rule down through the years. While the written words have varied, there is but a single test implicit in the several decisions. Perhaps the earliest opinion to warrant our consideration is in the case of Carter v. McClaughry, 183 US 365, 367, 46 L ed 236, 237, 22 S Ct 181 (1902). There the Supreme Court quoted with approval the following language from Morey v. Commonwealth, 108 Mass 433:

" 'The test [of second jeopardy for the same offense] is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and *if each requires proof of an additional fact which the other does not, an acquittal [apart from other considerations, i.e. res judicata] or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.*' "

The next opinion dealing with the subject is found in the case of Gavieres v. United States, 220 US 338, 55 L ed 489, 31 S Ct 421 (1911). The defendant there had been convicted of two offenses: (1) indecent behavior in a public place, and (2) insulting a public official in the exercise of his office by word of mouth and in his presence. The evidence disclosed that while in a public streetcar the defendant had conducted himself in a reckless and indecent manner both by acts and words and that the totality of his misbehavior was directed toward a public official then present.

The Court first observed that "It is true that the acts and words of the accused set forth in both charges are the same." The decision quoted from the Morey and Carter cases, supra, and held (page 343):

"Applying these principles, *it is apparent that evidence sufficient for conviction under the first charge would not have convicted under the second indictment.* In the second case it was necessary to aver and prove the insult to a public official or agent of the authorities, in his presence or in a writing addressed to him. Without such charge and proof there could have been no conviction in the second case. The requirement of *insult* to a public official was lacking in the first offense. Upon the charge, under the ordinance, it was necessary to show that the offense was committed in a public place, open to public view; the insult to a public official need only be in his presence or addressed to him in writing. *Each offense required proof of a fact which the other did not.* Consequently a conviction of one would not bar a prosecution for the other." [Emphasis supplied.]

The previous cases throw light on the holding in Blockburger v. United States, supra. The defendant in that action, on evidence showing but one sale, was found guilty of the offense of selling a forbidden drug not from the original stamped package and the offense of selling the same drug not in pursuance of a written order of the person to whom the drug was sold. Mr. Justice Sutherland served as the organ of the Court, and said (page 304):

"Each of the offenses created requires proof of a different element. *The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.* . . . Applying the test, we must conclude that here, although both sections were violated by the one

170

sale, two offenses were committed." [Emphasis supplied.]

It is important to note that in both the Gavieres case, supra, and the Blockburger case, supra, separate offenses were spelled out as a result of the consideration of different aspects of but a single act. Furthermore, the test was applied to the offenses alleged and the evidence necessary to support them. When each alleged offense required proof of an additional fact, which the other did not, the offenses were held to be separate. In addition, when the rules announced in all the cases are extracted, we believe it is fair to say that they stand for the propositions that (1) separate acts of a single transaction may be separately punished, and (2) separate aspects of a single act may also be separately punished.

In other cases, the Supreme Court has approved the propriety of punishing, as separate offenses, the severable acts of a single transaction. Thus where the defendant in one transaction cut open six mail bags intending to steal their contents, each act was held to be a separate offense, Ebeling v. Morgan, 237 US 625, 59 L ed 1151, 35 S Ct 710 (1915). In that case, the Court stated (page 632):

"So, here, proof of cutting and opening one sack completed the offense, and although defendant continued the operation by cutting into other sacks, proof of cutting one sack would not have supported the counts of the indictment as to cutting the others; nor was there that continuity of offense which made the several acts charged against the defendant only one crime."

On the same day, June 1, 1915, the Supreme Court decided the case of Morgan v. Devine, 237 US 632, 59 L ed 1153, 35 S Ct 712, wherein the defendant, in one transaction, unlawfully broke into a post office intending to commit larceny therein and stole Government funds from the building. He was convicted of both burglary and larceny, and, on petition for habeas corpus, was granted a discharge. Upon appeal, the Supreme Court reversed and directed the District Court to dismiss the petition. The opinion mentioned that there was but one criminal intent inspiring the whole transaction, but nevertheless the Court held (page 640):

"But the test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent and are such as are made punishable by the act of Congress."

In Albrecht v. United States, 273 US 1, 11, 71 L ed 505, 510, 47 S Ct 250 (1927), the defendant was convicted of both the illegal possession of liquor and the illegal sale of liquor. He contended that there was double punishment because the liquor which he had sold was the same liquor which he had possessed. The Court summarily rejected this contention, saying:

". . . One may obviously possess without selling; and one may sell and cause to be delivered a thing of which he has never had possession; or one may have possession and later sell, as appears to have been done in this case. The fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offense. There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction."

It appears that as late as 1947 the Supreme Court refused to retreat from the principles previously announced. In United States v. Michener, 331 US 789, 91 L ed 1818, 67 S Ct 1509 (1947), the Court in a per curiam opinion reversed the Eighth Circuit, citing Blockburger v. United States, supra; Albrecht v. United States, supra; and Gavieres v. United States, supra. The Circuit Court opinion, Michener v. United States, 157 F2d 616 (CA 8th Cir 1946), reveals that the defendant pleaded guilty to two counts of an indictment. The first count alleged he procured the manufacture of an engraving plate designed for counterfeiting currency. The second count alleged possession of the identical plate. He

171

was sentenced to consecutive terms of confinement for each count. Being dissatisfied with the sentence imposed, he appealed to the Circuit Court from an order denying his motion to vacate the sentence imposed and the judgment entered on the second count. The Circuit Court apparently had before it only such facts as were disclosed by the indictment, for the court relied upon a concession by Government counsel to establish that but one plate was involved. The Circuit Court decided that the two counts alleged a single offense, taking the view that proof of manufacturing or procurement of the manufacture of the plate necessarily proved the included offense of possession of the plate; but the Supreme Court reached a contrary conclusion. Considered in the light of the facts essential to each conviction, it is clear there were two severable acts involved in the single transaction, namely, manufacturing or procuring the manufacture of the plate and its possession. The plate had to be made before it could be possessed, but proof that the accused possessed the plate was not necessary to his conviction for causing the plate to be made. Conversely, proof that accused caused the plate to be made was not essential to accused's conviction for possession of the plate. Thus, it would seem that the Supreme Court's action was in accord with the decisions previously discussed.

The recent case of Pereira v. United States, 347 US 1, further demonstrates that the Supreme Court steadfastly adheres to the rule that if each alleged offense requires proof of an additional fact which the other does not, there is no multiplicity. In that case the defendant, pursuant to a scheme to defraud, obtained a check for $35,000 drawn on a California bank from the victim and deposited it for collection at a bank in El Paso, Texas. He subsequently collected the proceeds and fled. The two counts material here charged the defendant with causing the use of the mails for the purpose of executing a scheme to defraud, and causing the transportation in interstate commerce of stolen property. Only one act of the defendant was involved,

but the Supreme Court affirmed, saying, "a defendant may be convicted of both [offenses] even though the charges arise from a single act or series of acts, so long as each requires the proof of a fact not essential to the other."

We have no desire to unduly lengthen this opinion, but a reference to some of the decisions of the lower Federal courts will serve to illustrate the correct application of the Supreme Court and the Manual rule to varying fact situations. We have selected cases from practically every Federal Circuit and in each instance separate offenses were alleged, proven, and punished for but one act or one transaction by the defendant. See District of Columbia v. Buckley, 128 F2d 17 (CA DC Cir 1942), cert den 317 US 658, 87 L ed 529, 63 S Ct 57 (driving while intoxicated and driving on the wrong side of the street); Crespo v. United States, 151 F2d 44 (CA 1st Cir 1945) (transportation at one time and in one conveyance of five women for an immoral purpose); United States v. Miro, 60 F2d 58 (CA 2d Cir 1932) (wilful failure to file an income tax return and attempted evasion of the payment of income tax); United States v. Busch, 64 F2d 27 (CA 2d Cir 1933) (possession of heroin and possession of cocaine at the same time and in the same house); United States v. Mulligan, 67 F2d 321 (CA 2d Cir 1933) (possession and sale of counterfeit treasury notes); United States v. Hill, 77 F2d 970 (CA 3d Cir 1935) (five assaults on one person spelled out of one act by defendant committed with five different weapons); United States v. St. Clair, 62 F Supp 795 (DC Va 1945) (same as Crespo v. United States, supra); Normandale v. United States, 201 F2d 463 (CA 5th Cir 1953) (purchase of heroin and opium in one transaction); Pereira v. United States, 202 F2d 830 (CA 5th Cir 1953) (causing the mails to be used to execute a scheme to defraud and interstate transportation of stolen property); York v. United States, 299 Fed 778 (CA 6th Cir 1924) (interstate transportation of a stolen vehicle and concealing a vehicle knowing it to have been stolen and transported in interstate commerce); O'Brien v.

172

United States, 51 F2d 193 (CA 7th Cir 1931) (same as United States v. Miro, supra); Poffenberger v. United States, 20 F2d 42 (CA 8th Cir 1927) (theft of mail bags and abstraction of their contents); Matthews v. Swope, 111 F2d 697 (CA 9th Cir 1940) (manufacture of plates and possession of plates for the counterfeiting of treasury notes); Power v. Squier, 130 F2d 868 (CA 9th Cir 1942) (manufacturing of molds and possession of molds for the counterfeiting of silver treasury coins); Wiley v. United States, 144 F2d 707 (CA 9th Cir 1944) (forgery and utterance of a forged instrument); Carney v. United States, 163 F2d 784 (CA 9th Cir 1947) (possession of and manufacture of counterfeit ration coupons); Chrysler v. Zerbst, 81 F2d 975 (CA 10th Cir 1936) (same as York v. United States, supra); Slade v. United States, 85 F2d 786 (CA 10th Cir 1936) (endeavoring to influence a juror and impeding justice by influencing the same juror); and Bracey v. Zerbst, 93 F2d 8 (CA 10th Cir 1937) (same as United States v. Hill, supra).

But one more facet of the rule must be explored before we proceed to its application to this case. Each pronouncement of the test in all of the previous cases speaks in terms of dissimilarity of the elements of the offenses and facts of the case. By so doing they indicate that for the offenses to be separate each count must allege, and the proof must establish, a fact in one not necessary to the other. However, a converse application of the rule was adopted in O'Brien v. United States, supra (page 196), where the court observed that, "If the two counts of an indictment are identical, element for element, in necessary allegation and proof, then the two charges are for the same offense." Regardless of the form of the statement of the rule, only the facts necessary to allege and prove the elements of the offenses are involved.

In our previous discussion, we have used the test solely for the purpose of determining whether the ▮▮▮▮▮▮ offenses are separate or the same. There is, however, another provision of the Manual which is important to a proper solution

in this case. That deals with principal and included offenses which fall in a separate category. To prevent the imposition of punishment for both the greater or lesser offense, the Manual makes clear that lesser offenses are not separate for the purposes of multiplicity. Manual for Courts-Martial, supra, paragraph 76$a$(8). It is that provision which brings about difficulty in this case. To highlight the difference, we turn to the facts of the case.

In this instance it was alleged that the robbery was accomplished by force and violence and putting in fear. While either alternative, if proved, would normally be sufficient, Norris v. United States, 152 F2d 808 (CA 5th Cir 1946), cert den 328 US 850, 90 L ed 1623, 66 S Ct 1118, an allegation and proof of force and violence was necessary to permit the offense of robbery to be established. The allegations were not narrowed to show the particular means used to supply the force and violence and there was no fear engendered by any act or acts of these accused other than the striking with a club and choking with a belt. No other demonstration of force or violence was pleaded or proven. Thus, absent a showing of actual force and violence, the victim's fear would not have been "a reasonably well-founded apprehension of present or future injury." Manual for Courts-Martial, supra, paragraph 201, page 363. Stated succinctly, the fact that the victim was struck with a club and strangled with a belt lay at the core of the offense of robbery here and they were the only means which would sustain the allegation and proof of force and violence.

At common law, and in most American jurisdictions, a simple assault and battery was and is sufficient force and violence to make out the offense of robbery, when the other elements are present, 2 Burdick, Law of Crime, 1946 ed, § 591; 2 Bishop, Criminal Law, 9th ed, § 1167; 46 Am Jur, Robbery, § 15; and this is the military rule as well. Manual for Courts-Martial, supra, paragraph 201, page 363. Actual force or violence can be applied to a victim with or without using a dangerous weapon,

**173**

and fear in his mind can be created by threats regardless of dangerous instrumentalities. Had the allegations negatived the use of a deadly weapon, or had they suggested a non-aggravated type of assault, it could be argued that the more serious form of assault was not encompassed within the allegations of the specifications. But that is not the situation here. In this instance, we have a situation where the specification is couched in general language and the actual force and violence used to commit the offense of robbery was applied by means of using weapons in a way in which great bodily harm was likely to result. To meet the allegations and sustain the burden of proof, it was necessary to show that the victim was struck with a club and strangled with a belt, for no other act was done by the accused. These acts were not divisible, factually or legally, and if they were, qualitatively, greater force than necessary to support an allegation of robbery, they were nonetheless essential to this robbery specification. While an allegation of an aggravating factor may be surplusage to a principal offense, it may satisfy an element of the lesser. Therefore, we conclude that where, as here, the allegations of the specification are broad enough to permit proof of the use of a deadly weapon, and its use constitutes the force and violence of the robbery charge, an aggravated assault is a lesser crime included within the latter. United States v. Cooper, 2 USCMA 333, 8 CMR 133; United States v. Craig, 2 USCMA 650, 10 CMR 148.

Tested somewhat differently, if we assume that the Government had alleged the offense in the same language, but it had been unable to establish the larceny, would not the allegations and the proof support a finding of assault with a dangerous weapon? We thought so in United States v. Craig, supra, and we believe so here. The general rule is that where the specification contains facts showing all the constituent elements of the minor offense, it sufficiently alleges that offense. In construing the specification, some liberality of interpretation is permitted. Here the specification charged that the accused "by means of force and violence" did

steal. The specific means was not identified, but a weapon used in a dangerous manner is clearly within the coverage of the phrase. Therefore, unless the accused was in some way misled to his prejudice the specification meets the minimal requirements. The test we have previously announced for sufficiency is this:

". . . We have already made clear the test to be applied in determining the sufficiency of a specification—it must reasonably inform the accused of the charges he is expected to meet, enable him to properly prepare his defense, and, together with the evidence, be sufficient to provide protection against subsequent prosecution for the same offense." [United States v. Schumacher, 2 USCMA 134, 7 CMR 10.]

Giving the accused the benefit of every doubt, he was informed that he must be prepared to meet a charge of robbery involving a violent and forceful assault. If there was any assault in this case, and all reasonable persons would conclude there was one, the only means used would establish the aggravated nature of the offense. Accused was adequately apprised that he would be required to meet that issue and the other factors of the test are clearly present.

For the foregoing reasons, we hold that the law officer's instruction on the maximum imposable sentence was incorrect. While the sentence imposed by the court-martial was less than the maximum limit set by the law officer, and less than the maximum legal sentence which might have been imposed, we have no way of knowing what the sentence would have been had the court been instructed properly. There is more than a fair risk that an accused's sentence for two convictions would be greater than had one only been used as the basis for a sentence. For this reason, the law officer's error was prejudicial.

The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Army for reference to a board of review for action not inconsistent with this opinion.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring in the result):

In the absence of a specific—and to me a binding—direction in the Manual for Courts-Martial, I should be prompted distinctly to conclude that the accused in the case at bar was punishable for two entirely separate offenses. The offense of robbery was denounced by Congress to insure adherence to the norm that one person shall not by force —or in another setting, by fear—deprive another of his property. The degree of force used is wholly irrelevant to the definition of this crime. On the other hand, the proscription of the crime of aggravated assault was designed solely to insure obedience to the norm that one person shall not use against another weapons and instrumentalities which are characterized by a tendency to produce serious bodily harm. Here the degree of force utilized becomes the very hallmark of the offense. To me the two norms seem sufficiently distinct to suggest that— consistent with Congressional intent— they form separate bases for punitive action as to conduct which violates both. Cf. United States v. Beene, 4 USCMA 177, 15 CMR 177.

However, the Manual for Courts-Martial states specifically that "An accused may not be punished for both a principal offense and for an offense included therein." Paragraph 76a(8). We have frequently emphasized that the question of the inclusion of one offense within another must be determined principally through reference to the allegations of the specification alleging the offense. See, e.g., United States v. Davis, 2 USCMA 505, 10 CMR 3. The issue then becomes one of whether, under the allegations of the present specification of robbery, an assault with a dangerous weapon was included therein.

Traditionally this Court has worn an outsize pair of spectacles in viewing the problem of lesser included offenses, and has applied an extremely generous standard in determining whether a related offense is included within the principal one. I am sure of the overall soundness of this policy. It is arguable that a different approach to inclusion of offenses might be taken justifiably in determining whether an offensive accumulation of punishment was present. However, I am unwilling to impose such a refinement in interpreting the language of the Manual. Accordingly, I conclude that—within the framework of our general policy—the specification of robbery before us here included the aggravated assault found. Thereafter I proceed to apply the mandate of the Manual, and—like my brothers—must determine that separate punishments may not be imposed under each of the two specifications.