**UNITED STATES**

v.

**Airman First Class Scott S. CHISHOLM, FR 486–70–1582 United States Air Force.**

**ACM 22841.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 10 June 1980.

Decided 5 March 1981.

Appellate Counsel for the Accused: Colonel Larry G. Stephens, Major Robert G. Gibson and Captain Randolph D. Stowe, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Richard O. Ely, II.

Before EARLY, KASTL and MILLER, Appellate Military Judges.

## DECISION

MILLER, Judge:

A military wholesaler introduced drugs on to a base for the express purpose of selling them to several drug dealers assigned to that base. The question presented here is whether the offense of on-base possession of such a drug cache is multiplicious for sentencing purposes with the offense of transferring a single portion of it. We hold that it is not, and affirm.

The trial below was before military judge alone. The accused pleaded guilty to two specifications in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934: one, alleged transfer of some amount of hashish to a specified airman, the other, wrongful possession of some amount of hashish. Both offenses occurred on 14 December 1979 at Bitburg Air Base, Germany. The trial judge found the accused guilty in accordance with his pleas and ruled that the two specifications were not multiplicious for sentencing purposes. The approved sentence extends to a bad conduct discharge, confinement at hard labor for 18 months, total forfeitures, and reduction to airman basic.

■ The accused contends that the trial judge erred by concluding that the offenses of transferring and possessing hashish, were not multiplicious for sentencing purposes. Since the two specifications do appear on the Charge sheet to be facially separate, we are required to examine the circumstances surrounding the offenses to determine if they are "so related as to permit punishment for but a single offense," *United States v. Irving*, 3 M.J. 6 (C.M.A.1977), see also, *United States v. Harrison*, 4 M.J. 332 (C.M.A.1978), *United States v. Smith*, 1 M.J. 260 (C.M.A.1976), and *United States v. Meyer*, 21 U.S.C.M.A. 310, 45 C.M.R. 84 (1972).

The evidence in the case in chief discloses that an Air Force Office of Special Investigations (OSI) source went to the accused's barracks room for the purpose of obtaining hashish. The accused removed twenty (20) pieces of hashish from a plastic bag contain-

ing approximately 70 pieces. After agreeing that the source would pay the accused $55.00 per piece following resale by the source, the accused handed the 20 pieces to him. The source then left the room and turned the substance over to an OSI agent posted outside the door. Following acquisition of a valid search authorization, OSI agents entered the room. They confiscated 95 additional pieces of hashish secreted at three different places therein. The accused had paid his supplier 80 Deutsch Marks (approximately $47.05) for each piece of hashish.

Rebuttal evidence offered during sentencing provided additional facts. The accused had begun dealing in hashish three months earlier. His first purchase for resale consisted of two pieces of the same type confiscated the day of his apprehension. From that time forward, he had increased his dealings. During the month prior to his apprehension he had sold 600 pieces. The night before his apprehension he had purchased 150 pieces. His supplier was a German National, living a considerable distance from base. He always purchased from this same supplier, meeting her at her home or some other place off-base. She would give him hashish and wait for payment until after he had sold it. Two airmen other than the source made repeated quantity purchases from the accused each purchasing 300 pieces from him in the span of a single month. When apprehended, the accused owed his supplier $7,058.00; at least one of the dealers who purchased from him owed him $1,100.00; and he was in possession of hashish for which he personally had paid $4,470.00.

■ An analysis of these facts provides us with the following information pertinent to resolution of the instant multiplicity issue. The accused was procuring hashish from an off-base foreign national and bringing it on to base for the purpose of on-base distribution to at least three military dealers. During November alone, he sold hashish that he bought for approximately $28,000.00 to two of these dealers for approximately $33,000.00. Considering that each of these dealers purchased approximately $15,500.00 worth of hashish from the accused during this one month, we can assume that they in turn re-distributed their caches to other sellers at an even greater value.

The crux of the possession offense, then, appears to have been the establishment and continual replenishing of a stock pile of hashish intended by the accused to be sold at some future time to other military drug dealers, who could purchase it for resale without subjecting themselves to the additional risk of being caught introducing it onto the base.

The crux of the transfer offense was the actual sale of a portion of this hashish to one of these drug dealers.

The surrounding facts and circumstances clearly demonstrate that the accused intended to resell the hashish found in his possession at the time of his arrest. In contrast, the offense of transferring to another individual, was already completed at this time.

In view of the distinct nature of these offenses, we unhesitatingly decide that they are not so related as to permit punishment for but a single offense.[1] To hold under these circumstances that the consummated transfer offense, in any way terminated the separate existence of the on-going possession offense, would amount to granting an immunized status to drug wholesalers. Arguably, such a holding might encourage wholesalers to stock huge quantities of drugs on base intended for multiple later sales,[2] the risk to the wholesaler of such

---

1. In reaching this conclusion we are not unmindful of the opposing general rule suggested by former Chief Judge Fletcher in his concurring opinion in *United States v. Smith, supra,* 1 M.J. at page 262, "... it is inappropriate to subject an individual to multiple drug offenses where the drug allegedly distributed, transfer-

red, used, or sold is part or all of the quantum of the drug allegedly possessed."

2. The continued possession after a single transfer by a drug wholesaler who keeps, or possesses, his drug supply on base for the easy and convenient purchase and pick-up by other mili-

stockpiling being substantially reduced by his knowledge that punishment for such possession would merge with his arrest and punishment for any single transfer.

 The primary concern of any test for multiplicity is to avoid punishing twice for what is essentially one offense. The tests themselves, are merely tools to be applied to distinguish essentially separate offenses from multiplicious ones in close cases. *United States v. Harrison, supra, United States v. Washington,* 1 M.J. 473 (C.M.A. 1976), *United States v. Mirault,* 18 U.S.C. M.A. 321, 4 C.M.R. 33 (1960). Here, it is patently obvious without reference to the tests that the offenses charged were not multiplicious. Separate punishment for each offense was clearly justified.

 Lest it be thought, however, that in arriving at this decision we ignored applica-

tion of the standard tests for multiplicity or that we failed to heed the caution of the Court of Military Appeals that "no one test ... (for multiplicity) ... can be applied to the exclusion of all others", we hasten to add that we did in fact analyze each of the six tests the Court has enunciated.[3] In the factual context here,[4] none led to a conclusion contrary to the result just stated. The "elements", "facts", and "lesser included offense" tests were inapplicable; the two offenses neither constituted "one integrated transaction" nor were they motivated by a "single impulse"; and while the transfer offense occurred during the continuing possession offense, the facts and circumstances surrounding each offense were not such as to "connect" the two offenses making them essentially a single transaction.[5] The *impending* threat to society of possessing a

tary drug dealers, or even users, assigned to that base, "poses a real threat to the functioning of any military unit, and hence to the operation of the military services in their constitutional role of this country's defense", *United States v. Middleton,* 10 M.J. 123, 129, n. 11 (C.M.A.1981). The consequences of the threat presented are too grave to permit punishment for this offense to merge into an earlier transfer of a portion of that supply, even where the transfer was consumated only seconds earlier. See Chief Judge Everett's insightful discussion on the derogating effect of drug use upon the readiness of military forces in *United States v. Trottier,* 9 M.J. 337, 345–348 (C.M.A.1980).

3. The six tests are: (1) whether each offense requires proof of a real element not required to prove the other, (the elements test), *United States v. Yarborough,* 1 U.S.C.M.A. 678, 5 C.M.R. 106 (1952), *United States v. McVey,* 4 U.S.C.M.A. 167, 15 C.M.R. 167 (1954), *United States v. Brown,* 8 U.S.C.M.A. 18, 23 C.M.R. 242 (1957); (2) whether each offense requires proof of an additional fact which the other does not, (the facts test), *United States v. McVey, supra, United States v. Posnik,* 8 U.S.C.M.A. 201, 24 C.M.R. 11 (1957); (3) whether one offense contains all the constituent elements of another offense, (the lesser included offense test), *United States v. Posnik, supra*; (4) whether each offense was committed in a transaction motivated by a single impulse, (the single impulse, integrated transaction test), *United States v. Kleinhans,* 114 U.S.C.M.A. 496, 34 C.M.R. 276 (1964), *United States v. Dicario,* 8 U.S.C.M.A. 353, 24 C.M.R. 163 (1957), *United States v. Pearson,* 19 U.S.C.M.A. 379, 41 C.M.R. 379 (1970), *United States v. Weaver,* 20 U.S.C.M.A. 58, 42 C.M.R. 250

(1970); (5) whether each offense was committed at essentially the same time and the facts and circumstances surrounding each offense were such as to connect the two or more offenses, making them essentially one integrated transaction (the unity of time; existence of connected chain of events test), *United States v. Smith, supra, United States v. Irving, supra, United States v. Waller,* 3 M.J. 32 (C.M.A. 1977); and (6) whether each offense violates separate societal norms (the societal norm test), *United States v. Beene,* 4 U.S.C.M.A. 177, 15 C.M.R. 177 (1954), *United States v. Burney,* 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971), *United States v. Washington,* 1 M.J. 473, 475, n. 3 (C.M.A.1976).

4. Although the rebuttal portion of this evidence was accepted by the trial judge only for the limited purpose of rebutting evidence as to good moral character, it could properly have been considered by him, and is considered by us, on the issue of multiplicity for the purpose of establishing the circumstances surrounding the allegedly multiplicious offenses. *United States v. Irving, supra.*

5. For an example of what constitutes essentially one integrated transaction, see *United States v. Irving, supra,* where possession of the remainder of a cache from which drugs were transferred on consignment was essentially integrated into the transfer offense because there was no showing that the possession was anything other than incidental to the transfer, i. e., simply a "leftover" from the single intended offense.

drug with the intent to engage in future multiple transfers violates a distinctively different "societal norm" than the *static* harm to society of the actual transfer itself.

Accused's reliance on an interpretation of the "unity of time; existence of connected chain of events" test, as looking to the facts and circumstances surrounding the timing and method of *discovery* of the offenses, rather than those surrounding the *commission* of the offenses, is flatly rejected as inconsistent with the primary concern of tests for multiplicity stated above.

Where, as here, the surrounding facts and circumstances demonstrate the "possession" offense is a possession with intent for future sale after the "transfer, sale or use offense" has already occurred, the offenses are not so related as to permit punishment for but a single offense.

The other assertions of error submitted by the accused are without merit. Accordingly, the findings of guilty and the sentence are

AFFIRMED.