Judge RYAN
delivered the opinion of the Court.
In this case, Appellant was charged with rape in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006). The military judge sua sponte instructed on, and the members convicted Appellant of, an uncharged violation of Arti *467 cle 134, UCMJ, 10 U.S.C. § 934 (2006)— indecent acts with another (indecent acts), presented as a lesser included offense (LIO). No one disagrees that the elements of indecent acts and rape are not the same,[1] and the MCM does not list indecent acts as an LIO of rape. However, indecent acts is listed in the MCM as an LIO of indecent assault, MCM, Punitive Articles Applicable to Sexual Assault Offenses Committed Prior to 1 October 2007 app. 27 at A27-2 (2008 ed.); MCM pt. IV, para. 63.d(2) (2005 ed.), which in turn is listed as an LIO of rape, MCM, Punitive Articles Applicable to Sexual Assault Offenses Committed Prior to 1 October 2007 app. 27 at A27-2 (2008 ed.); MCM pt. IV, para. 45.d(l)(e) (2005 ed.). Further, indecent acts was held to itself be an LIO of rape in United States v. Schoolfield, 40 M.J. 132 (C.M.A.1994), on the grounds that the elements of the two offenses — while different— were related, and that “although indecent acts requires a service disorder or discrediting circumstances, such an element is included by implication in Article 120.” Id. at 137 (citing United States v. Foster, 40 M.J. 140, 143 (C.M.A.1994), overruled in part by United States v. Miller, 67 M.J. 385, 388-89 (C.A.A.F.2009)).
This case, then, presents the question, not expressly answered in our recent cases, whether an offense is “necessarily included” in, a subset of, or an LIO of a charged “greater” offense when it has no elements in common with the elements of the charged offense but is nonetheless either listed as an LIO in the MCM or has been held by this Court to be an LIO on some other ground. See United States v. McCracken, 67 M.J. 467, 468 n. 2 (C.A.A.F.2009). We answer this question in the negative and reverse that portion of the decision of the United States Air Force Court of Criminal Appeals (CCA).[2]
I. Facts
While stationed at Incirlik Air Base, Turkey, Appellant engaged in various activities that resulted in him being charged with failure to go to his place of duty, rape, forcible sodomy, purchasing alcohol for minors, and dishonorably failing to maintain sufficient funds in his checking account, in violation of Articles 86, 120, 125, and 134, UCMJ, 10 U.S.C. §§ 886, 920, 925, 934 (2006). When instructing on the rape charge (Charge I), the military judge also instructed the members on the offense of indecent acts: “When you vote, if you find the accused not guilty of the offense charged, that is, rape, then you should next consider the lesser included offense of indecent acts with another in violation of Article 134.” After listing the elements of indecent acts, the military judge defined the term “indecent act” and explained the circumstances under which an accused could be convicted of the offense. Before reading the instructions to the members, the military judge gave the defense the opportunity to object to this instruction. The defense did so, but its objection focused only on whether the facts of the case were “r[aised] to that level”; defense counsel explicitly agreed that indecent acts “[a]s a general concept” could be an LIO of rape. The military judge never formally ruled on the objection, but he did ultimately give the indecent acts instruction. After the military judge read the instructions to the members, he asked both parties whether they objected to the instructions given or requested any *468 additional instructions. Both parties responded in the negative.
The members convicted Appellant of all the charges and specifications under consideration but one:[3] Instead of rape, Appellant was convicted of indecent acts, as instructed upon by the military judge as an LIO. Appellant was sentenced to a reduction to the grade of E-l, forfeiture of all pay and allowances for eighteen months, confinement for eighteen months, and a bad-conduct discharge. The convening authority reduced the forfeitures and confinement to fifteen months but otherwise approved the adjudged sentence. The CCA affirmed the findings and sentence. United States v. Jones, No. ACM 36965, 2008 CCA LEXIS 484, at *25, 2008 WL 4898569, at *8 (A.F.Ct.Crim.App. Oct. 22, 2008).
II. Discussion
The question presented in this case implicates constitutional due process imperatives of notice, see United States v. Medina, 66 M.J. 21, 26-27 (C.A.A.F.2008), the text of Article 79, UCMJ, 10 U.S.C. § 879 (2006), and the legislative prerogative to delineate the parameters of federal criminal offenses, see Liparota v. United States, 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985).
The due process principle of fair notice mandates that “an accused has a right to know what offense and under what legal theory” he will be convicted; an LIO meets this notice requirement if “it is a subset of the greater offense alleged.” Medina, 66 M.J. at 26-27. If indeed an LIO is a subset of the greater charged offense, the constituent parts of the greater and lesser offenses should be transparent, discernible ex ante, and extant in every instance. While people are presumed to know the law, e.g., Atkins v. Parker, 472 U.S. 115, 130, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985), they can hardly be presumed to know that which is a moving target and dependent on the facts of a particular case.
And it is for Congress to define criminal offenses and their constituent parts. Liparota, 471 U.S. at 424, 105 S.Ct. 2084. One offense either is or is not an LIO, necessarily included in another offense.
While it has been said that “[t]he question of what constitutes a lesser-included offense [in the military justice system] ... is a Hydra,” United States v. Weymouth, 43 M.J. 329, 342 (C.A.A.F.1995) (Crawford, J., concurring in the result), rather than embracing a “Hydra” we return to the elements test, which is eminently straightforward and has the added appeal of being fully consonant with the Constitution, precedent of the Supreme Court, and another line of our own cases. See infra Part II.A
A.
“The Constitution requires that an accused be on notice as to the offense that must be defended against, and that only lesser included offenses that meet these notice requirements may be affirmed by an appellate court.” Miller, 67 M.J. at 388 (citing Jackson v. Virginia, 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948)). The importance of defining LIOs in this context cannot be understated, as an accused may be convicted of uncharged LIOs precisely because they are deemed to have notice, Medina, 66 M.J. at 27, and military judges must instruct the members on LIOs reasonably raised by the evidence, United States v. Miergrimado, 66 M.J. 34, 36 (C.A.A.F.2008).
The statutory authority for affirming an LIO rather than the facially charged offense derives from Article 79, UCMJ: “An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein.” Earlier in this Court’s history, this Court— relying on its own precedent and the com *469 mentary to Article 79, UCMJ[4] — interpreted the “necessarily included” language in Article 79, UCMJ, out of the statute. Thus, while Article 79, UCMJ, unquestionably contains the words “necessarily included,” this Court in United States v. Virgilito, 22 C.M.A. 394, 47 C.M.R. 331 (1973), stated:
This Court has applied a liberal standard in determining whether an offense is lesser included in one that is charged. It has rejected the notion that the lesser offense must necessarily be included in the greater. The basic test to determine whether the court-martial may properly find the accused guilty of an offense other than that charged is whether the specification of the offense on which the accused was arraigned alleges fairly, and the proof raises reasonably, all elements of both crimes so that they stand in the relationship of greater and lesser offenses.
The question respecting the allegations is whether they fairly embrace the elements of the lesser offense and thus give adequate notice to the accused of the offenses against which he must defend.
Id. at 395-96, 47 C.M.R. at 332-33 (emphasis added) (quotation marks and citation omitted) (citing and quoting United States v. Thacker, 16 C.M.A. 408, 410, 37 C.M.R. 28, 30 (1966); citing United States v. McVey, 4 C.M.A. 167, 15 C.M.R. 167 (1954)); accord McVey, 4 C.M.A. at 175, 15 C.M.R. at 175 (Brosman, J., concurring in the result) (“Traditionally this Court has worn an outsize pair of spectacles in viewing the problem of lesser included offenses, and has applied an extremely generous standard in determining whether a related offense is included within the principal one. I am sure of the overall soundness of this policy.”). Under these loose theories — whose difficulties of application did not escape criticism[5] — whether and when offense X was an LIO of offense Y depended on subjective judgments as to whether the elements of one offense were “close enough” to altogether different elements of another offense.
Later, in Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), the Supreme Court analyzed Fed. R.Crim.P. 31(c)[6] — whose language at that time was almost identical to Article 79, UCMJ — and adopted the “elements” test, holding that “one offense is not ‘necessarily included’ in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the *470 lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).” Id. at 716, 109 S.Ct. 1443. Analyzing the requirement of “necessary inclusion of lesser offense in the greater,” the Supreme Court noted:
While the elements test is true to this requirement, the inherent relationship ap-proaehf[7]] dispenses with the required relationship of necessary inclusion: the inherent relationship approach permits a lesser included offense instruction even if the proof of one offense does not invariably require proof of the other as long as the two offenses serve the same legislative goals.
Id. at 717, 109 S.Ct. 1443. With the elements test adopted in Schmuck, however, the lesser offense is literally, and hence “necessarily,” included in the greater.
After Schmuck, this Court in United States v. Teters, 37 M.J. 370, 375-76 (C.A.A.F.1993), changed course by expressly abandoning the “inherent relationship” and “fairly embraced” tests for LIOs. Noting that the language of Article 79, UCMJ, is virtually identical to Fed.R.Crim.P. 31(c) and that the former was patterned on the latter, this Court embraced the elements test for identifying LIOs within the military justice system. See Teters, 37 M.J. at 376.[8] Under the elements test, one compares the elements of each offense. If all of the elements of offense X are also elements of offense Y, then X is an LIO of Y. Offense Y is called the greater offense because it contains all of the elements of offense X along with one or more additional elements.
Although this Court drifted significantly from the Teters application of Schmuck with respect to LIOs, see, e.g., United States v. Hudson, 59 M.J. 357, 359 (C.A.A.F.2004) (“Rather than adopting a literal application of the elements test,” resolving LIO issues “ ‘by lining up elements realistically and determining whether each element of the supposed “lesser” offense is rationally derivative of one or more elements of the other offense — and vice versa.’ ” (quoting Foster, 40 M.J. at 146)), that modified position is no longer seriously supportable in light of our more recent focus — consonant with the Constitution, precedent of the Supreme Court, and the Teters line of cases[9] — on the significance of notice and elements in determining whether an offense is a subset (and thus an LIO) of the greater offense. See Miller, 67 M.J. at 388-89 (overruling language from Foster suggesting that an accused is on notice of an Article 134, UCMJ, LIO because every enumerated offense under the UCMJ is per se prejudicial to good order and discipline or service discrediting, and rejecting the notion of implied elements); Medina, 66 M.J. at 26-27 (recognizing that the due process principle of fair notice is met by an LIO if “it is a subset of the greater offense alleged”).
B.
The Government suggests that none of the above matters, because the elements test is merely a means to the end of fulfilling the notice requirement of the Due Process Clause, and the notice function of the elements test can be accommodated in this case by either case law or LIOs listed within the explanation sections of MCM pt. IV.
It is true that this Court in Schoolfield expressly held that indecent acts was an LIO of rape. 40 M.J. at 137. But in so holding, *471 the Court reasoned that the service discrediting or prejudicial to good order and discipline element of indecent acts was implied in the offense of rape. Id. That reasoning was based on the logic of Foster and was expressly overruled in Miller. See Miller, 67 M.J. at 388-89. Therefore, to the extent that Schoolfield holds that indecent acts is an LIO of rape, it is no longer good law.
But, more directly, the Government’s suggestion that this is merely a matter of due process fails in the face of Article 79, UCMJ. This case implicates not only the question whether this Appellant was on notice that he would need to defend against indecent acts, but also the interpretation and application of Article 79, UCMJ, a provision enacted under the constitutional authority of Congress to provide rules for the government and regulation of the armed forces, U.S. Const. art. I, § 8, cl. 14. As we noted in Teters, the language of this article is substantially identical to language the Supreme Court has interpreted to require the elements test in the civilian context, 37 M.J. at 375-76, and the same interpretation was applied in the military justice context, id. at 376.
Moreover, suggesting that listing a criminal offense as an LIO within the MCM automatically makes it one, irrespective of its elements, ignores the very definition of a crime. Crimes are composed of elements, and they include both a required act (actus reus) and a mental state (mens red). See United States v. Apfelbaum, 445 U.S. 115, 131, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980); 1 Wayne R. LaFave, Substantive Criminal Law § 1.2, at 11 (2d ed.2003). Save a few minor exceptions, federal crimes are solely creatures of statute. See Liparota, 471 U.S. at 424, 105 S.Ct. 2084; LaFave, § 2.1(c), at 107. Determinations as to what constitutes a federal crime, and the delineation of the elements of such criminal offenses — including those found in the UCMJ — are entrusted to Congress. See Li-parota, 471 U.S. at 424, 105 S.Ct. 2084; 1 Charles E. Torcía, Wharton’s Criminal Law § 10, at 37-38 (15th ed.1993).
[There is no] basis for the proposition that the President may create an offense under the Code. To the contrary, our fore-fathers reposed in the Congress alone the power “To make Rules for the Government and Regulation of the land and naval Forces.” [U.S. Const, art. I, § 8.] The President’s power as Commander-in-Chief does not embody legislative authority to provide crimes and offenses.
United States v. McCormick, 12 C.M.A. 26, 28, 30 C.M.R. 26, 28 (1960) (citations omitted).
It stands to reason, then, that an LIO — the “subset” “necessarily included” in the greater offense — must be determined with reference to the elements defined by Congress for the greater offense. And that is indeed how courts have proceeded. See, e.g., Carter v. United States, 530 U.S. 255, 259, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (“[Section] 2113(b) requires an element not required by § 2113(a) — three in fact — and therefore is not a lesser included offense of § 2113(a).”); United States v. Browner, 937 F.2d 165, 168 (5th Cir.1991) (applying elements test to find “assault with a dangerous weapon” under 18 U.S.C. § 113(c) not an LIO of “voluntary manslaughter”).
In short, the case before us involves an analysis of the substantive law promulgated by Congress with respect to lesser included offenses and does not call on us to address the full contours of presidential power, including the power of the President as commander in chief. But see United States v. Jones, 68 M.J. at 474, 475-79 (C.A.A.F.2010) (Baker, J., dissenting). In particular, this opinion does not — and should not be read to — question the President’s ability to list examples of offenses with which one could be charged under Article 134, UCMJ. See generally MCM pt. IY, paras. 61-113 (2008 ed.). The President in those instances is not defining offenses but merely indicating various circumstances in which the elements of Article 134, UCMJ, could be met. The President’s listing of offenses under Article 134, UCMJ, is persuasive authority to the courts, see Miller, 67 M.J. at 388 n. 5 (citation omitted) (noting that “MCM explanations of offenses are not binding on this Court” and are instead “generally treated as persuasive *472 authority, to be evaluated in light of this Court’s precedent”); United States v. Gonzalez, 42 M.J. 469, 474 (C.A.A.F.1995) (citing United States v. Hemingway, 36 M.J. 349, 351 (C.M.A.1993)), and offers guidance to judge advocates under his command regarding potential violations of the article.
To be perfectly clear, this case concerns lesser included offenses, not the constitutionality of Article 134, UCMJ. For although the terms Congress chose for the article are broad, see generally Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (“For the reasons which differentiate military society from civilian society, we think Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the former shall be governed than it is when prescribing rules for the latter.”), what is general is made specific through the language of a given specification. The charge sheet itself gives content to that general language, thus providing the required notice of what an accused must defend against. Presidential narrowing of the “general” article through examples of how it may be violated is part of why Article 134, UCMJ, is not unconstitutionally vague. Id. at 753-56, 94 S.Ct. 2547.
Moreover, we must take care to avoid the conflation of two unrelated propositions: the President’s ability to suggest ways in which Article 134, UCMJ, might be charged, which we do not take issue with, and the ability of the President to declare that a particular example of an Article 134, UCMJ, offense is a lesser included offense of something Congress defined as a criminal offense in a separate section of the UCMJ, and which is defined by elements that have no common ground with Article 134, UCMJ. This case addresses only the latter proposition.
Nor does this case either decide or foreclose the ability of Congress to consider whether authority to define LIOs should or could be delegated to the executive, and, if so, what standards and limitations should apply to any such delegation. Cf. Solorio v. United States, 483 U.S. 435, 446, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987) (noting that “Congress, and not the Executive, was given the authority to make rules for the regulation of the Armed Forces”). Congress has delegated specific authority to the President with respect to designated areas of court-martial practice. See, e.g., Article 36, UCMJ, 10 U.S.C. § 836 (2006) (authorizing the President to prescribe rules of pretrial, trial, and post-trial procedure and evidence); Article 56, UCMJ, 10 U.S.C. § 856 (2006) (authorizing the President to prescribe maximum limits of punishment). But Congress has not delegated to the President a general authority to determine whether an offense is “necessarily included” in the charged offense under Article 79, UCMJ.[10] Cf. Ellis v. Jacob, 26 M.J. 90, 92 (C.M.A.1988) (“[T]he President’s rule-making authority does not extend to matters of substantive military criminal law.”).
C.
Interpreting Article 79, UCMJ, to require the elements test for LIOs has the constitutionally sound consequence of ensuring that one can determine ex ante — solely from what one is charged with — all that one may need to defend against. This practice is surely preferable and more sound than judges at the trial and appellate levels making subjective judgments as to whether elements line up “ ‘realistically.’ ” Hudson, 59 M.J. at 359 (quoting Foster, 40 M.J. at 146). To the extent any of our post-Teters cases have deviated from the elements test, they are overruled.
Requiring this notice places no constraints on the viability of Article 134, UCMJ, offenses, or the flexibility of Article 134, UCMJ, for commanders. Nothing here prevented the Government from charging indecent acts in addition to rape — the government is always free to plead in the aiter- *473 native. See United States v. Medley, 33 M.J. 75, 76 (C.M.A.1991) (quoting United States v. Heyward, 22 M.J. 35, 37 (C.M.A. 1986)). Nor is there anything to prevent the government, with the accused’s consent, from amending the charge sheet in the course of trial to allege a less serious or different offense than the one originally charged. See R.C.M. 603(d). Finally, the accused is always free to plead “not guilty to an offense as charged, but guilty of a named lesser included offense; [or] guilty with exceptions, with or without substitutions, not guilty of the exceptions, but guilty of the substitutions, if any.” R.C.M. 910(a).
Regardless of what could have been done here, applying the elements test to the case as it is before us, the elements of rape do not include all (or indeed any) of the elements of indecent acts, and the instruction on the latter in this case — which included the element that “under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces” — was in error.[11] And the variance between what Appellant was charged with and what he was convicted of was fatal: Appellant was charged with rape, and nothing in that charge put Appellant on notice that he also needed to defend against indecent acts. The Specification of Charge I must therefore be set aside.
III. Decision
The decision of the United States Air Force Court of Criminal Appeals is reversed as to the finding of indecent acts under Charge I and the sentence. The findings of guilty to Charge I and its Specification are set aside, and that Charge and Specification are dismissed. The remaining findings of guilty are affirmed. The record is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence or, if it determines appropriate, for the ordering of a rehearing on sentence.

. Compare Manual for Courts-Martial, United States pt. IV, para. 90(b) (2005 ed.) (MCM) (listing the elements of indecent acts as: "(1) That the accused committed a certain wrongful act with a certain person; (2) That the act was indecent; and (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces”), with MCM pt. IV, para. 45.b(l) (2005 ed.) (listing the elements of rape as: "(1) That the accused committed an act of sexual intercourse; and (2) That the act of sexual intercourse was done by force and without consent”).

. We granted the following issue:
WHETHER APPELLANT'S CONVICTION FOR INDECENT ACTS WITH ANOTHER MUST BE SET ASIDE BECAUSE THE MILITARY JUDGE ISSUED ERRONEOUS AND MISLEADING INSTRUCTIONS SUPPORTING INDECENT ACTS AS AN AVAILABLE LESSER-INCLUDED OFFENSE TO THE ORIGINAL RAPE CHARGE AND THE RESULTING CONVICTION UNDER CHARGE I AND ITS SPECIFICATION AMOUNTED TO A FATAL VARIANCE.

. One specification of dishonorably failing to maintain sufficient funds in his checking account was thrown out post-arraignment pursuant to Rule for Courts-Martial (R.C.M.) 917.

. See MCM ch. XXVIII, para. 158 (1968 ed.) (Discussion to Article 79, UCMJ) ("An included offense exists when a specification contains allegations, which are sufficient, either expressly or by fair implication, to put the accused on notice that he must be prepared to defend against it in addition to the offense specifically charged. This requirement of notice is met when the elements of the included offense are necessary elements of the offenses charged.... Also, this requirement of notice, depending on the allegations in the specification of the offense charged, may be met although an included offense requires proof of an element not required in the offense specifically charged, for example, assault in which grievous bodily harm is intentionally inflicted may be included in assault with intent to murder, although the actual intentional infliction of bodily harm required in the former is not an element of the latter.”).

. See, e.g., United States v. Zupancic, 18 M.J. 387, 391-93 (C.M.A.1984) (Cook, S.J., concurring in part and dissenting in part) (criticizing the majority's expansion of the "traditional notion” of LIOs — where "each element of one offense fits either directly or by reasonable implication into some element of another offense” — to include offenses “which, in their estimation, are 'fairly embraced' by the allegations relating to another charge”; cataloging inconsistencies found in the Court's caselaw resulting from "the myriad, fickle rules propounded by this Court, in light of my Brothers’ failure to follow even their own dictates”) (footnotes omitted).

."The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.” The current version — which in 2002 was reworded in a stylistic, non-substantive way, see Fed.R.Crim.P. 31(c) advisory committee's note — reads:
A defendant may be found guilty of any of the following:
(1) an offense necessarily included in the offense charged;
(2) an attempt to commit the offense charged; or
(3) an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right.

.This approach was formulated in United States v. Whitaker, 447 F.2d 314 (D.C.Cir.1971):
There must also be an "inherent” relationship between the greater and lesser offenses, i.e., they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.
Id. at 319.

. Although the commentary of the 1968 MCM and each one thereafter has included the vague "or by fair implication" language, that language predates and was effectively if not formally superseded by Schmuck and Teters.

. For cases reiterating the Teters adoption of the elements test and applying it in the context of multiplicity, see, for example, United States v. Wheeler, 40 M.J. 242 (C.M.A.1994); United States v. Ramsey, 52 M.J. 322 (C.A.A.F.2000); and United States v. Dillon, 61 M.J. 221 (C.A.A.F.2005).

. The absence of reference to either the President or presidential authority within the text of Articles 79 or 134, UCMJ, stands in stark contrast to the specific and reticulated grant of authority to the President, 50 U.S.C. § 1702, within the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1707 (2006).

. In the context of a plain error analysis, Appellant has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right. See United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F.1998). Under the first prong, the military judge erred in giving the instruction for the reasons set forth above. With respect to the second prong, the error was "plain and obvious,” at least in the sense that those words are legal terms of art, because Schoolfield was no longer good law after Miller and McCracken. Cf. United States v. Harcrow, 66 M.J. 154, 159 (C.A.A.F.2008). Regarding the third prong, conviction of an offense not charged was clearly prejudicial in the context of plain error analysis where, as here, the case was not tried on a theory of indecent acts and the military judge did not introduce the subject of indecent acts into the case until after the parties had completed their presentation of the evidence.