# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JOHN T. GOETZ**
**United States Army, Appellant**

ARMY 20130744

Headquarters, 7th Infantry Division
David L. Conn, Military Judge (arraignment)
Jeffery D. Lippert (trial)
Lieutenant Colonel Michael S. Devine, Staff Judge Advocate

For Appellant: Captain Patrick A. Crocker, JA; William E. Cassara, Esquire (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major John K. Choike, JA; Captain Robyn M. Chatwood, JA (on brief).

22 December 2015

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of one specification of abusive sexual contact, one specification of unlawful entry[1], and one specification of incapacitation for duty as a result of wrongful prior overindulgence in intoxicating liquors, in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920 and 934 (2012). The court-martial sentenced appellant to a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

---

[1] Appellant was convicted of unlawful entry (a violation of Article 134, UCMJ) as a lesser-included offense of the charged burglary (Article 129, UCMJ).

On appeal, appellant raises three assignments of error, one of which merits discussion but no relief. Additionally, we find one additional error which warrants both discussion and relief.

## I. BACKGROUND

Appellant was a chaplain's assistant. On 21-23 September, 2012, appellant assisted in putting on a conference by the Fort Lewis chaplaincy. The conference, "Strong Bonds," was designed to help married service members respond to the stress of deployment. The conference was held in a hotel in Tacoma, Washington. Conference organizers and participants stayed at the hotel.

Mrs. RS, the civilian spouse of a deployed warrant officer, attended the conference in order to meet new friends and grow spiritually. On 22 September 2012, at around 2130 hours, and after the day's conference events, Mrs. RS went down to the hotel bar to meet some friends because she heard a rumor that singer Tim McGraw was staying in the hotel and she hoped to catch a glimpse of him. Instead, she ran into appellant, whom she knew from his role in helping to run the conference.

Appellant and Mrs. RS chatted and drank, and at some point were joined by her friends Mrs. TW and Mr. LW. Around midnight, the hotel bar was closing, apparently without any Tim McGraw sightings, so they discussed going to a nearby sports bar. Mrs. TW warned Mrs. RS to not go. To which Mrs. RS responded, "I'm with a gay man and a chaplain's assistant. I can't get any safer than this going out."

Appellant, Mrs. RS, and Mr. LW stayed at the second bar for about an hour. Mrs. RS testified that she had about four and a half alcoholic drinks during the course of the night and that appellant had about five. As they were talking and drinking at the second bar, appellant put his hand on Mrs. RS's knee, which she removed after some time. He placed his hand back on her knee, and she removed it again.

When they left the bar, they returned to the hotel and continued to talk. At around 0200 hours, the three decided to call it a night and headed to their hotel rooms. After getting off the elevator on her floor, as Mrs. RS was fumbling in her pocket to find her room key, she felt a tap on her shoulder. She was surprised to see appellant, as his room was several floors above. When she asked appellant why he was there, he responded that he just wanted to make sure that she got to her room alright. Mrs. RS couldn't find her room key so she and appellant went down to the first floor to get a new room key.

As Mrs. RS got off the elevator for the second time, appellant again followed her to her room and again surprised her by tapping on her shoulder. Appellant asked

Mrs. RS for a hug, and noted that she had given her friend Mr. LW a hug at the end of the night. Mrs. RS gave him a hug, but after a few seconds, when she went to back away, appellant continued the embrace. Mrs. RS testified that the hug ended when she told appellant that she was happily married for 22 years, that she didn't "do this," and that he needed to leave.

Once in her room alone, Mrs. RS sent her husband an email. She admitted to being "bombed" and not being able to see straight she was so intoxicated. In the email (verbatim excerpt provided below) she also told her husband that:

> [T]he chaplains asst was way to mice. i think when he
> escorted me to my room to make sure i was safe, he
> hugged me just a little TOO LONG. i don't know if he
> was ex;ecting more, but i am here alkone going to pass out
> now. i love you and didn't do anything I wasn't supposed
> to. chocolate martinis are great.

Mrs. RS testified that after she fell asleep, she was awoken by appellant tapping on her hotel room door. She put on a bathrobe, opened the door, and told appellant to go back to bed. Mrs. RS then went back into her room, took off her bathrobe, crawled into bed, and again fell asleep. She testified that she did not shut the door, but rather released it to let it close on its own.

Mrs. RS was awoken again by someone saying her name. Startled, she rolled over and came face to face with appellant. As she looked at appellant's face about six inches from hers, she thought "this is how I'm going to get raped."

She testified that appellant then hooked his leg on top of her and put a hand on each of her shoulders and started lowering his weight onto her. Remembering a television show she once saw, Mrs. RS yelled at him and pushed appellant as hard as she could with both arms and one leg and then started swinging at him. After appellant got off the bed she told him that she had been married 22 years and "he was not doing this to [her] or [her] husband or our marriage." She testified that appellant then walked back towards her, put his finger in her face and said he was just testing her to see if she was a faithful wife. Appellant then left Mrs. RS's room.

Appellant also testified at trial and agreed there was a night of drinking, followed by an awkward hug at the end. Appellant, however, claimed he never returned to Mrs. RS's room and called an alibi witness, Specialist MA, who testified that she was with appellant in his room during the alleged assault of Mrs. RS.

When the conference began at 0800 the next morning, appellant was not present for duty. When appellant still had not shown by 0930, the chaplain in charge of the conference asked a conference participant to go and get appellant. When

appellant eventually reported for duty at 1000 hours, the chaplain stated he could smell alcohol on him from a distance of six feet and that appellant appeared to be suffering from a hangover. He also stated that he should have given appellant a breathalyzer. However, the chaplain also testified that appellant did not act intoxicated and, after reporting for work, appellant was immediately able to perform his duties, and that he had no problem with the quality of appellant's work.

## II. DISCUSSION

A. *Unlawful Entry as a Lesser-Included Offense of Burglary.*

Although not raised by appellant, we find the military judge committed plain error when he instructed the panel that they could find appellant guilty of unlawful entry as a lesser-included offense of burglary.

At trial, the military judge informed the parties that he identified both housebreaking (a violation of Article 130, UCMJ) and unlawful entry (a violation of Article 134, UCMJ) as lesser-included offenses of burglary (a violation of Article 129, UCMJ). Although defense counsel admitted that the lesser offenses had been raised, they specifically requested that the lesser offenses not be instructed on. During the discussion, the military judge and both parties specifically discussed how to instruct on the terminal element to the unlawful entry. However, there was not discussion regarding whether the existence of the Article 134 terminal element barred the possibility of it being a lesser-included offense of the Article 129 offense. The military judge instructed on both lesser-included offenses, to include all elements and relevant definitions. The panel acquitted appellant of burglary and housebreaking, but found him guilty of unlawful entry.

"Whether an offense is a lesser-included offense is a question of law that is reviewed de novo." *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013) (citing *United States v. Girouard,* 70 M.J. 5, 9 (C.A.A.F. 2011)). "Because there was no objection to the instruction at trial, we review for plain error." *Id*. (citing *United States v. Wilkins,* 71 M.J. 410, 412 (C.A.A.F. 2012)). Under a plain error analysis, an appellant "has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused." *Girouard,* 70 M.J. at 11.

As appellant did not raise this issue at trial or on appeal, appellant has failed to meet his plain error burden. However, we nonetheless reach this issue under our "highly discretionary" authority under Article 66(c) to approve only those findings that "should be approved." *United States v. Butcher*, 56 M.J. 87, 93 (C.A.A.F. 2001) (it is "the duty of the Courts of Criminal Appeals to 'affirm only such findings of guilty, and the sentence . . . as it . . . determines, on the basis of the entire record, should be approved.'").

This court applies the "elements test" to determine whether one offense is a lesser-included offense of another. *United States v. Jones,* 68 M.J. 465, 468 (C.A.A.F. 2010). Under the elements test, one compares the elements of each offense. "If all of the elements of offense X are also elements of offense Y, then X is a lesser-included offense of Y. Offense Y is called the greater offense because it contains all of the elements of offense X along with one or more additional elements." *Id.* at 470.

Unlawful entry, as with all Article 134 offenses, includes as the terminal element that the conduct was prejudicial to good order and discipline or was of a nature to bring discredit upon the armed forces. Accordingly, unlawful entry is not a lesser-included offense of burglary under Article 129 or housebreaking under Article 130.

Having found error, we also find that this error was plain and obvious. This case was tried in 2013, more than three years after the shift in lesser-included offense jurisprudence caused by *Jones.* 68 M.J. at 471. Similarly, the central holding in our superior court's decision in *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011), requires the government to allege the terminal element in all Article 134 offenses. That holding, which also applies here as the terminal element was not charged, also altered military justice practice, and is well known as it touched cases at nearly every stage of the court-martial process.

Finally, in light of the defense's specific request to not instruct on any lesser-included offenses, we find this error was to the substantial prejudice of the accused.

Accordingly, we will set aside the finding of guilty of the Specification of Charge I and Charge I and provide relief in our decretal paragraph.

B. *Legal Sufficiency – Incapacitation for Duty Due to Wrongful Overindulgence of Alcohol*

The elements of being incapacitated for performance of duties through wrongful prior indulgence in intoxicating liquor are as follows:

1) That appellant had certain duties to perform;

2) That appellant was incapacitated for the proper performance of such duties;

3) That such incapacitation was the result of previous wrongful indulgence in intoxicating liquor or any drug; and

    4) That under the circumstances, the conduct of appellant was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*Manual for Courts-Martial, United States*, (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 76.b.

On appeal, appellant argues the evidence supporting that specification is legally insufficient because upon reporting for duty two hours late, appellant was able to perform all assigned tasks. The Supreme Court stated that in reviewing for legal sufficiency of the evidence, "the relevant question" an appellate court must answer is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011).

As the military judge instructed, a person is incapacitated for duty if they are "unfit" *or* "unable" to perform duties.[2] *See MCM*, pt. IV, ¶ 76.c.(2). One is "unable" to perform duties if, for example, he cannot perform duties because of an illness caused by prior intoxication. *Id.* Although not addressed by either party, a person is "unfit" if at the time the duties are to commence the person is drunk even though physically able to perform the duties. *Id.* "Drunk" means any intoxication which is sufficient to impair the rational and full exercise of the mental or physical faculties. *MCM*, pt. IV, ¶ 35.c.(6). Thus, one is incapacitated for duty if 1) he is drunk, or 2) he is unable to perform duties because of previous alcohol consumption.

We agree with appellant that once he reported, he was able to perform assigned duties. This, however, does not address whether appellant was *unfit* to perform duties during the entire morning, or whether he was *unable* to perform duties from 0800 to 1000 hours. Put differently, could a reasonable panel find that on the morning in question, appellant was drunk (i.e. unfit) or that he was unable to perform duties before 1000 hours because of his prior drinking?

Viewing the evidence in a light most favorable to the prosecution, we answer the question in the affirmative. First, there was substantial evidence which the panel could credit that appellant drank significant amounts of alcohol the night prior. Mrs. RS testified that appellant was already drinking when she encountered him at the hotel bar. For the rest of the night, appellant matched Mrs. RS drink for drink. She described appellant as slurring his words and stumbling at the end of the night.

---

[2] For a discussion on the difference between drunk on duty under Article 112, UCMJ, and being incapacitated for duty under Article 134, see *United States v. Hoskins*, 29 M.J. 402 (C.A.A.F. 1990).

Additionally, appellant's conduct in Mrs. RS's room does not reflect acts made after sober contemplation.

After being awakened, appellant testified that he showered, brushed his teeth, and changed. Nonetheless, upon appellant's arrival for duty, the chaplain testified he could smell the alcohol on appellant at a distance of six feet, and that he should have given appellant a breathalyzer. There was evidence to which the panel could reasonably attach credit that appellant was drunk or "unfit" to perform duty on the morning of 23 September 2012.

Additionally, it was unquestioned that at 0800, the time appellant's duties were to commence, he was "unable" to perform duties. Appellant himself testified that after being out late at night drinking he didn't set an alarm before going to bed and therefore overslept. Appellant was asleep at 0800, and clearly a soldier who is asleep is incapable of performing his duties. A reasonable panel could have found that the reason (i.e. proximate cause) of appellant's failure to set an alarm and therefore oversleep was because of the prior night's overconsumption of alcohol. Additionally, having heard appellant's testimony and being able to judge his credibility, the panel was free to reject appellant's alarm clock explanation and find that his testimony was substantive evidence of guilt. *United States v. Pleasant*, 71 M.J. 709, 713 (Army Ct. Crim. App. 2012) (citing *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004) (An accused testifies at his own peril, and when he chooses to testify, "he runs the risk that if disbelieved the [panel] might conclude the opposite of his testimony is true.")).

Accordingly, we find the evidence is legally sufficient to affirm the panel's findings.[3]

### III. CONCLUSION

The military judge abused his discretion when he instructed on the lesser-included offense of unlawful entry. As but for this error appellant would have been acquitted, this error was not harmless by any standard. The findings of guilty to Charge I and its Specification are set aside and that charge and specification are DISMISSED.

Having reviewed the entire record, the remaining findings of guilty are correct in both fact and law and are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by

---

[3] Although we only address legal sufficiency, we also find the evidence is factually sufficient.

appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann,* 73 M.J. 11, 15–16 (C.A.A.F. 2013) and *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986). In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape that might cause us pause in reassessing appellant's sentence. Further, although appellant was tried and sentenced by a panel, the nature of the remaining offenses still captures the gravamen of the original offenses and the circumstances surrounding appellant's conduct. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

Reassessing the sentence based on the noted error and the remaining findings of guilty, we AFFIRM only so much of the sentence as provides for a bad-conduct discharge, four months of confinement, and forfeiture of all pay and allowances. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by our decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8