*121 Judge RYAN
delivered the opinion of the Court.
The charges in this case stem from an evening of drinking that culminated in Appellant and another male airman entering the room of a female airman and each performing sexual acts with her in the presence of the other. A general court-martial convicted Appellant, in accordance with his pleas, of one specification of indecent acts (a violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006)) and, contrary to his pleas, of one specification each of conspiracy, rape, and housebreaking (violations of Articles 81, 120, and 130, UCMJ, 10 U.S.C. §§ 881, 920, 930 (2006), respectively).[1] A panel composed of officer and enlisted members sentenced Appellant to a dishonorable discharge, one year of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-l. The convening authority disapproved the rape conviction and altered the sentence to a bad-conduet discharge, five months of confinement, forfeitures of all pay and allowances, and reduction to E-l. The United States Air Force Court of Criminal Appeals (CCA) affirmed the. altered findings and sentence. United States v. Contreras, No. ACM 37233, 2009 WL 1508120, at *6 (A.F.Ct.Crim.App. May 28, 2009).
We granted review of the following issue:
WHETHER THE HOUSEBREAKING CHARGE SHOULD BE SET ASIDE BECAUSE THE UNDERLYING CRIMINAL OFFENSE, INDECENT ACTS WITH ANOTHER UNDER ARTICLE 134, UCMJ, IS A PURELY MILITARY OFFENSE.
As detailed below, we conclude that indecent acts with another, a violation of Article 134, UCMJ, is not a purely military offense.
DISCUSSION
Article 130, UCMJ, outlaws unlawful entry into “the building or structure of another with intent to commit a criminal offense therein.” The President, however, has narrowed this language, stating that the definition of “criminal offense” does not extend to “an act or omission constituting a purely military offense.” Manual for Courts-Martial, United States pt. IV, para. 56.c(3) (2005 ed.) (MCM).[2] Appellant argues that the housebreaking specification failed to state an offense because indecent acts (at the time a violation of Article 134, UCMJ)[3] is a purely military offense and thus cannot serve as the underlying criminal offense he allegedly had the intent to commit. This appeal thus continues our inquiry, begun last term in United States v. Conliffe, 67 M.J. 127 (C.A.A.F.2009), into what constitutes a “purely military offense.”
A.
Whether a particular Article 130, UCMJ, “criminal offense” is a “purely military offense” is a question of law, which we review de novo. See United States v. Rendon, 58 M.J. 221, 224 (C.A.A.F.2003). Although the concept of a purely military offense predates the UCMJ by several decades, the MCM has never defined the phrase,[4] and neither party here has been *122 able to explain either the genesis or purpose of this limit on Article 130, UCMJ, prosecutions. Almost every ease referring to purely military offenses is focused on jurisdictional issues, see, e.g., Woodrick v. Divich, 24 M.J. 147, 150 (C.M.A.1987); United States v. Ornelas, 2 C.M.A. 96, 97, 6 C.M.R. 96, 97, 1952 WL 2283 (1952), and among those cases there is disagreement as to how the test for determining whether something is a purely military offense is formulated.[5]
Given the absence of guidance, we are left with a number of possible approaches, of which the parties urge two: Appellant believes that we should determine whether indecent acts is a purely military offense by reference to the elements of the offense itself; the Government believes that we should do so by looking at the gravamen of the act comprising the criminal offense and asking whether it is an act that is, or could be, a criminal offense under the law of any state or under federal law.
The CCA in this case adopted the latter approach. Although it recognized that Article 134, UCMJ, requires proof of one of two “military element[s]” (that the act or omission was “prejudicial to good order and discipline” or “service discrediting”), the CCA reasoned that because a Minnesota statute, Minn.Stat. § 617.23 (2009), criminalized conduct similar to the military’s definition of indecent acts, indecent acts was not a purely military offense. 2009 WL 1508120, at *3.
B.
The Government asks us to adopt the CCA’s approach and consider state laws that arguably prohibit the conduct that constituted the “indecent acts” in this case. But this approach is inconsistent with Conliffe, our only published opinion analyzing purely military offenses in the context of the housebreaking statute, Article 130, UCMJ.
In Conliffe, a United States Military Academy cadet unlawfully entered both the barracks room of a fellow cadet and an Academy sports team’s locker room, where he set up cameras to record women changing clothes and showering. 67 M.J. at 130. He was charged with, and pleaded guilty to, three specifications of housebreaking, with the intended criminal offense upon entry for each specification being conduct unbecoming an officer and a gentleman (an Article 133, UCMJ, 10 U.S.C. § 933 (2000), offense). 67 M.J. at 129-30. We held that the housebreaking convictions could not stand because Article 133, UCMJ, is a purely military offense. 67 M.J. at 132-33. The Government invited us in Conliffe to engage in a survey of state law similar to what the CCA did here, and to reference state laws criminalizing voyeurism (the conduct that was the basis for the Article 133, UCMJ, charge) to determine that the Article 133, UCMJ, offense was not a purely military offense. 67 M.J. at 133 n. 2. But we expressly declined that invitation, id., focusing instead on the fact that Article 133, UCMJ:
necessarily requires proof that the accused is a commissioned officer, cadet, or midshipman because the conduct must have disgraced or dishonored the accused in his or her official capacity_ Only a commissioned military officer, cadet, or midshipman can commit the offense and it is *123 only a court-martial that has jurisdiction to prosecute such an offense.
67 M.J. at 132 (citations and quotation marks omitted).
Our analysis focused on the status of the offender under the statute itself: Could Article 133, UCMJ, be violated by a person who is not a member of the military? The answer was clearly “no.” By its own terms, Article 133, UCMJ, requires that the accused be a “commissioned officer, cadet, or midshipman,” and “[t]he focus of Article 133, UCMJ, is the effect of the accused’s conduct on his status as an officer, cadet, or midshipman.” Id. This focus on status was consistent with Marsh, where we determined, in another context, that unauthorized absence, Article 86, UCMJ, 10 U.S.C. § 886 (1982), was a “ ‘peculiarly militar/ offense, for by its express terms the statutory prohibition applied] only to a ‘member of the armed forces.’ ” 15 M.J. at 254.
Neither the CCA nor the parties to this case have given us a good reason to depart from this elements-based approach, which determines whether an offense is a “purely military offense” by reference to whether the elements of the underlying crime, either directly or by necessary implication, require that the accused be a member of the military. Nor is the Court aware of any important development in the short time since Conliffe was decided that would lead us to reconsider this analytic framework.
Moreover, this approach has the benefit of being consistent with the historical context in which the MCM was created. Part of the genesis behind the modern MCM was the understanding that military justice may be administered by non-lawyers, see United States Army, The Army Lawyer: A History of the Judge Advocate General’s Corps, 1775-1975 206 (1975), sometimes in distant locations with only a MCM to guide them. We are not convinced that the President expected these non-specialists to conduct a fifty-state survey before deciding whether to charge a servicemember with housebreaking.[6] It is equally as consistent with the stated purpose and historical context of the MCM that the President intended a simple, bright-line test that could be easily applied and determined by reference to the MCM itself. See MCM, Drafters’ Analysis app. 21 at A21-1 (“[I]t was determined that the Manual for Courts-Martial should be sufficiently comprehensive, accessible, and understandable so it could be reliably used to dispose of matters in the military justice system properly, without the necessity to consult other sources, as much as reasonably possible.”) (emphasis added).
Therefore, consistent with our decision in Conliffe, we decline to determine whether an offense is a purely military offense by conducting a survey of, or making other reference to, state and federal law. We devolve instead to consideration of the elements of the underlying offense.
C.
In this case, the underlying offense in the housebreaking specification is indecent acts. At the time Appellant committed his crimes, indecent acts with another was prohibited under Article 134, UCMJ. The statutory text of Article 134, UCMJ, provides that:
Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.
The President, in the discussion section of the MCM, provides further limitations to this broad statutory language, stating that in order to punish indecent acts with another under Article 134, UCMJ, the Government must prove:
*124 (1) That the accused committed a certain wrongful act with a certain person;
(2) That the act was indecent; and
(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
MCM pt. IV, para. 90.b.
Article 134, UCMJ, by its terms, applies to anyone “subject to this chapter.” Under the UCMJ, that phrase includes a variety of individuals who are not in the military. See Article 2(a), UCMJ, 10 U.S.C. § 802(a) (2006). Appellant’s contention that any crime charged under clause 1 or 2 of Article 134, UCMJ, must be a purely military offense is therefore incorrect — the text of the UCMJ provides that Article 134, UCMJ, might be violated by persons who are not and never have been in the military.[7]
Of course, the MCM further limits the application of some offenses listed under Article 134, UCMJ, to military members only. See, e.g., MCM pt. IV, paras. 83.b (fraternization); 84.b (gambling with subordinate). These are purely military offenses. Other crimes, however, are not so limited, nor would anyone otherwise consider them to be purely military offenses despite the necessity of proving and pleading that the conduct was service discrediting or prejudicial to good order and discipline. See, e.g., id. paras. 66.b (bribery and graft); 92.b (kidnapping); 97.b (pandering and prostitution).[8]
The application of Article 134, UCMJ, to punish indecent acts with another is not limited to military members, either expressly or by necessary implication. Consequently, Appellant’s housebreaking specification stated a viable offense when it alleged he unlawfully entered a fellow airman’s room with the intent to commit indecent acts.
DECISION
The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. Appellant was also charged with, but found not guilty of, one specification of indecent assault under Article 134, UCMJ.

. The President’s analysis of the punitive articles is persuasive, but not binding, authority. United States v. Miller, 67 M.J. 87, 89 (C.A.A.F.2008) (citing United States v. Miller, 47 M.J. 352, 356 (C.A.A.F.1997)). However, the Government expressly stated at oral argument that it was not challenging this limitation on the language of Article 130, UCMJ. Moreover, “[wjhere the President’s narrowing construction is favorable to an accused and is not inconsistent with the language of a statute, 'we will not disturb the President’s narrowing construction, which is an appropriate Executive branch limitation on the conduct subject to prosecution.' " United States v. Guess, 48 M.J. 69, 71 (C.A.A.F.1998) (quoting United States v. Davis, 47 M.J. 484, 486-87 (C.A.A.F.1998)).

. For crimes committed after October 1, 2007, indecent acts falls under Article 120(k), UCMJ. National Defense Authorization Act for Fiscal Year 2006, Pub.L. No. 109-163, § 552(a)(2)(f), 119 Stat. 3136, 3263 (2006).

. The closest we have to an early MCM definition is in a separately compiled drafters’ history of the 1951 MCM that — while discussing the jurisdictional rules that eventually became Rule for Courts-Martial (R.C.M.) 201, regarding exclusive *122 and non-exclusive jurisdiction — defines purely military offenses as "those offenses which are not generally denounced by a civil system of justice. They are such offenses as absence without leave, desertion, disrespect towards officers ... and similar offenses of a military character.” Charles L. Decker et al., Legal and Legislative Basis, Manual for Courts-Martial, United States 14 (1951); accord MCM, Analysis of Rules for Courts-Martial app. 21 at A21-8 (2008 ed.) [hereinafter Drafters' Analysis] ("Military offenses are those, such as unauthorized absence, disrespect, and disobedience, which have no analog in civilian criminal law.”).

. See, e.g., United States v. Marsh, 15 M.J. 252, 254 (C.M.A.1983) (limiting purely military offenses to those offenses where the accused’s status as a servicemember is an element of the offense); United States v. Bailey, 6 M.J. 965, 968 (N.C.M.R.1979) (en banc) ("In a purely military offense the accused’s status [as a member of the military] is always a part of, or fundamentally underlies, one of the elements, but it is not, itself, a separate element.”); United States v. Rubenstein, 19 C.M.R. 709, 788 (A.F.B.R.1955) (citing numerous cases and treatises for definition of purely military offense as "an offense denounced only by military law”).

. Even if one were to conduct such a survey, it would only lead to more questions: Do the jurisdictions that prohibit the conduct need to actually enforce the statute? How many jurisdictions must outlaw similar conduct before a crime loses its purely military character?

. Referencing Article 2(a), UCMJ, in the context of determining what constitutes a purely military offense does not answer or prejudge the altogether different question of whether non-servicemem-bers may be prosecuted under the UCMJ. Whether something is a "purely military offense" depends on whether the UCMJ limits prosecution for the offense to servicemembers or contemplates the prosecution of a non-servicemember, not on whether a non-servicemember may in fact be prosecuted in a particular case. See, e.g., United States v. Stebbins, 61 M.J. 366, 369 (C.A.A.F.2005) (holding that in determining whether death was the maximum authorized punishment for rape a court "need not answer the question of whether [the accused] may actually be sentenced to death”); Willenbring v. Neurauter, 48 M.J. 152, 180 (C.A.A.F.1998) (holding that rape was a capital crime for statute of limitation purposes regardless of whether the necessary factors were present to sentence the accused to death in that case); United States v. Ealy, 363 F.3d 292, 296-97 (4th Cir.2004) (holding that the statutory question of whether to apply the limitation period for capital or for non-capital offenses did not depend on whether the death penalty could be constitutionally imposed for the offense in question); United States v. Manning, 56 F.3d 1188, 1195-96 (9th Cir.1995) (same).

. Of course, as always, the President’s analysis of the punitive articles is persuasive authority and may potentially further limit the application of some punitive articles to military members only, just as he limited the application of the housebreaking statute to cases where the underlying offense was something other than a purely military offense. See supra note 2 and accompanying text. This Court can consider such a Presidential limitation while applying an elements-based approach. Contra Contreras, 69 M.J. at 126 (Baker, J., concurring in result). And in the unlikely event that we are presented with a case where a person unlawfully entered the building or structure of another with the intent to jump from a vessel, wrongfully cohabitate therein, or any of the other examples described by the concurring opinion, see id. at 125 & n.2, 126, we are confident that we can fairly address those sitúa- *125 tions under the framework set forth in Conliffe and further explained here.