# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, A.Y. MARKS, B.T. PALMER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

**v.**

**JORDAN J. MICHELENA**
**LIEUTENANT COMMANDER (O-4), MC, U.S. NAVY**

**NMCCA 201400376**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 19 June 2014.
**Military Judge:** CAPT Robert B. Blazewick, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southeast,
Naval Air Station, Jacksonville, FL.
**Staff Judge Advocate's Recommendation:** CDR N.O. Evans,
JAGC, USN.
**For Appellant:** LT Ryan W. Aikin, JAGC, USN.
**For Appellee:** LT Ann E. Dingle, JAGC, USN.

**29 October 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS
PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

BRUBAKER, Senior Judge:

A panel of officers sitting as a general court-martial
convicted the appellant, contrary to his pleas, of two
specifications of conspiracy, robbery, conduct unbecoming an
officer, two specifications of solicitation to commit an
offense, receipt of stolen property, and communication of a
threat in violation of Articles 81, 122, 133, and 134, Uniform
Code of Military Justice, 10 U.S.C. §§ 881, 922, 933, and 934.
The members sentenced the appellant to confinement for 12 months

and a dismissal.  The convening authority approved the sentence as adjudged.

The appellant raises three assignments of error (AOEs): (1) the offenses of robbery and receipt of stolen property are multiplicious; (2) all offenses other than conspiracy and robbery constitute unreasonable multiplication of charges (UMC); and, (3) factual insufficiency.  We find merit in his first AOE and partial merit in his second AOE.  We otherwise affirm.

**Factual Background**

In November 2012, the appellant, a 32-year-old lieutenant commander at the time, met BCN, an 18-year-old man, through a smart phone application.  About a month later, on the appellant's invitation, BCN dropped out of high school and moved from his parents' home in California to live with the appellant in Florida.

The appellant provided generous gifts to BCN, added him as an authorized user on several credit cards, and opened a joint bank account and joint credit cards with him.  BCN took full advantage of this arrangement, racking up over $60,000.00 on a variety of purchases.  Then, in February 2013, BCN moved back to California taking with him a number of items acquired during the ill-fated relationship, including two used BMWs (which he shipped using money from the joint bank account), an iPhone, a personalized Louis Vuitton wallet, and a $400.00 key chain.

Following BCN's departure, the appellant made contact with EN, a convicted felon, and asked him to rob and physically harm BCN.  Specifically, he instructed EN to steal BCN's phone, wallet, and one of the two cars, sending him the following text message: "If u [sic] take his stuff u can make it look like a mugging lol."[1]  He followed up with: "Beat [BCN] up enough to spend a couple days in the hospital but not enough to kill him."[2] The appellant then shared BCN's banking and personal information with EN so that the latter could steal BCN's money.  EN responded, "Send $2000 an [sic] I'll do this right now I'll take his car an [sic] give you everything . . ."[3]  Following this exchange, the appellant sent EN two payments through Western Union.

---

[1] Prosecution Exhibit 3.

[2] *Id.*

[3] *Id.*

In April 2013, EN initiated communication with BCN via a chat line and ultimately got BCN to agree to meet him one evening at a dog park.  There, EN robbed BCN, allegedly at gunpoint,[4] and took his phone, wallet, and keychain.  EN then had an apparent change of heart and, feeling sorry for BCN, returned the car key and decided not to steal his car or to physically harm him.  But for good measure, he threatened to harm BCN and his family if he contacted the police.  BCN nonetheless later reported the robbery to the police.

The following morning, EN sent the appellant a photograph of BCN's phone, wallet, and keychain.  He then mailed all three items to the appellant's home.

On the basis of this conduct, the members convicted the appellant of the following: conspiracy to commit robbery; conspiracy to commit aggravated assault; robbery; conduct unbecoming an officer and a gentleman; solicitation to commit assault; solicitation to commit larceny; receipt of stolen property; and communication of a threat.

**Analysis**

**I.  Multiplicity**

The appellant asserts that Specification 3, Charge IV——receipt of stolen property——is multiplicious with Charge II and its specification——robbery.  We agree.

Whether two offenses are multiplicious is a question of law that we review *de novo*.  *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006).  But when an appellant fails to raise the issue at trial, he forfeits any error unless he can show plain error.  *United States v. Britton,* 47 M.J. 195, 198 (C.A.A.F. 1997), *overruled in part on other grounds by United States v. Miller*, 67 M.J. 385, 389 (C.A.A.F. 2009).  An appellant may show plain error by showing that the specifications at issue are "facially duplicative, that is, factually the same." *United States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F. 2000) (citations and internal quotation marks omitted).  "Whether specifications are facially duplicative is determined by reviewing the language of the specifications and facts apparent on the face of the record."  *Id*. (citations and internal quotation marks omitted).

---

[4] The members acquitted the appellant of the language in the robbery specification alleging the use of a gun.

The appellant avers *United States v. Cartwright*, 13 M.J. 174 (C.M.A. 1982), settles the question in his favor.  There, the Court, relying on the Supreme Court's ruling in *Milanovich v. United States*, 365 U.S. 551 (1961) and progeny, held that "absent a clear legislative intent to the contrary, theft and receiving are inconsistent offenses . . . ."  *Cartwright*, 13 M.J. at 176.

The Government counters that the vitality of *Cartwright* has been undermined by recent case law——a point with which we agree——but goes on to claim that *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010) establishes that "the sole test for multiplicity is the elements test . . . ."[5]  But *Jones* addressed *lesser included offenses* (LIOs), not multiplicity.  In conflating the two concepts, the Government has been sucked into the "Multiplicity/LIO Family Vortex."[6]  Its premise can be summed up by the following syllogism: If Offense A is an LIO of Offense B, then A and B are multiplicious (true).  Therefore, if Offense A is not an LIO of Offense B, then A and B are not multiplicious (false).  We will explain why the latter statement is false.

Multiplicity and LIO doctrines are closely intertwined but not interchangeable.  Each targets a distinct Constitutional protection: the right to notice as to what charges an accused is defending against in the case of LIOs, *Jones*, 68 M.J. at 468, and, in the case of multiplicity, the Double Jeopardy Clause's safeguard against multiple convictions and punishments arising out of a single criminal transaction absent Congressional intent to the contrary, *United States v. Teters*, 37 M.J. 370, 373 (C.A.A.F. 1993).

Prior to *Teters*, military courts applied the "fairly embraced" and "means" tests to determine whether, in the absence of a clear expression otherwise, Congress intended for an accused to be convicted of multiple offenses arising out of the same act or course of conduct.  The *Teters* Court abandoned such tests and instead, citing *Schmuck v. United States*, 489 U.S. 705 (1989), embraced the elements test.  *Teters*, 37 M.J. at 378.  Under this test, *when Congress has not clearly stated otherwise*, courts determine their intent using the separate elements test established in *Blockburger v. United States*, 284 U.S. 299 (1932).  *Teters*, 37 M.J. at 376-77.  Specifically, "where the same act or transaction constitutes a violation of two distinct

---

[5] Appellee's Answer of 29 Apr 2015 at 8 (emphasis added).

[6] Gary E. Felicetti, *Surviving the Multiplicity/LIO Family Vortex*, 2011 Army Law, 46.

statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304 (citation omitted); *see also United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010).

After *Teters*, military courts strayed from the elements test. But in 2010, life was breathed back into it when *Jones* held it was the only appropriate test for determining whether one offense is an LIO of another. *Jones*, 68 M.J. at 470. But that does *not* mean it is the sole test for determining multiplicity. For that, we turn to the case expressly endorsed by *Jones*—*Teters*. *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) ("there is only one form of multiplicity, that which is aimed at the protection against double jeopardy as determined using the *Blockburger*/*Teters* analysis") (footnote omitted).

As explained in *Teters*, the elements test is simply a means to an end in multiplicity cases: determining whether Congress intended for an accused to be convicted of two offenses arising out of the same act or course of conduct. *Teters*, 37 M.J. at 377. If the legislature has plainly expressed that it does not so intend, the inquiry ends there; the offenses are multiplicious. Only in the more common scenario when legislative intent is not plainly expressed do we turn to the elements test—the same one we apply to determine if offenses are LIOs.

Turning to this case, the President has—acting in his rulemaking capacity delegated to him by Congress, *see* Article 36, UCMJ—plainly expressed his intent. He directs that in a case involving stolen property, "a principal to the larceny . . . when not the actual thief, may be found guilty of knowingly receiving the stolen property but may not be found guilty of both the larceny and receiving the property." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 106c(1).[7]

---

[7] This rule has been part of military jurisprudence for more than 30 years. It was first inserted in the Manual in 1984 when it amended its antipodal rule in the 1969 Manual. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1984 Part IV, ¶ 106c and MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1969 (Revised ed.) ¶ 213f(14). The 1984 Manual analysis of ¶ 106c cites *Cartwright*, 13 M.J. 175 as the basis for that change. *See* MCM 1984 App. 21, at A21-105. In the intervening three decades, Congress has done nothing to disturb this Presidential limitation.

It may be said that Presidential explanations in the Manual for Courts-Martial are merely persuasive—not binding—authority. *Jones*, 68 M.J. at 471-72. But "[w]here the President's narrowing construction is favorable to an accused and is not inconsistent with the language of a statute, we will not disturb the President's narrowing construction, which is an appropriate Executive branch limitation on the conduct subject to prosecution." *United States v. Contreras*, 69 M.J. 120, 121 n.2 (C.A.A.F. 2010) (citations and internal quotation marks omitted). This is especially so in the realm of Article 134 offenses, where "Presidential narrowing of the 'general' article through examples of how it may be violated is part of why Article 134, UCMJ, is not unconstitutionally vague." *Jones*, 68 M.J. at 472 (citation omitted).

Because the President has clearly expressed his intent to limit the general article offense of receipt of stolen property by prohibiting conviction both for it and for larceny of the same property, they are multiplicious. Further, as one cannot be convicted of robbery without being convicted of larceny as a subset of the offense,[8] it necessarily follows that robbery and receipt of the same stolen property are likewise multiplicious.

It was thus error to convict the appellant of both robbery as a principal and receipt of the property stolen in the course of the robbery. This error was plain: it is apparent from the face of this record that the appellant was convicted of two specifications rendered duplicative by the President's narrowing construction—a construction he made explicit in the Manual for Courts-Martial.

The finding of guilty to Specification 3 of Charge IV is set aside.

**II. Unreasonable Multiplication of Charges**

The appellant next asks us to set aside the findings for all offenses other than conspiracy and robbery, averring they represent UMC for findings. We agree in part.

The prohibition against UMC is codified in RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.): "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." This provides trial and appellate courts a mechanism

---

[8] MCM, Part IV, ¶¶ 46b, 47b.

6

to address prosecutorial overreaching by imposing a standard of reasonableness. *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001).

We consider five factors when determining if the Government has unreasonably multiplied charges:
(1) Did the accused object at trial?

(2) Is each charge and specification aimed at distinctly separate criminal acts?

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

(4) Does the number of charges and specifications unfairly increase the appellant's punitive exposure?

(5) Lastly, is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Quiroz*, 55 M.J. at 338.

Beyond conspiracy and robbery, the appellant was convicted of the following: (a) conduct unbecoming an officer and gentleman; (b) solicitation to commit larceny; (c) solicitation to commit aggravated assault; and, (d) communicating a threat.[9] The appellant made no objection at trial concerning UMC. That factor weighs heavily against him. For the remaining factors, we consider each offense in turn.

### a.  Conduct Unbecoming an Officer and Gentleman

The specification under Charge III alleges the appellant did "wrongfully and dishonorably pay [EN] to rob and assault" BCN. The Government asserts that the payment of EN, which is not alleged in any other specification, is a sufficiently distinct criminal act that separates it from the others. While a thin reed—the payment, after all, is what enticed EN into this untoward agreement—the payment does represent an otherwise uncharged bad act. Critical here is that the appellant did not object at trial. Also, a conviction for conduct unbecoming an officer does not exaggerate his criminality. It did increase his punitive exposure—a factor that weighs in the appellant's favor. But, weighing the final factor, we see no evidence of

---

[9] The allegation regarding receipt of stolen property is mooted by our action.

7

prosecutorial overreaching and on balance find no UMC for this offense.

### b. Solicitation to Commit Assault

Specification 1 of Charge IV alleges the appellant solicited EN to commit an aggravated assault on BCN. The appellant was also charged and convicted of *conspiracy* to commit the same offense. In other words, first he was charged with asking another to assault BCN⸺solicitation⸺then the solicitee agreed and there was an overt act⸺conspiracy. While each of these two offenses has an element the other does not, we find this to be overreaching, not aimed at distinctly separate criminal acts, and an exaggeration of the appellant's criminality. On balance, we find charging the solicitation and conspiracy to commit the same crime in this case to constitute UMC and therefore set aside the solicitation conviction.

### c. Solicitation to Commit Larceny

The specification alleging solicitation to commit larceny, on the other hand, targets a different request than that embodied in the conspiracy to commit robbery. The former addresses the appellant supplying EN with BCN's bank information and personal identification number, and encouraging EN to use it to steal BCN's bank card and money. The latter addresses the appellant's agreement with EN to steal specified items from BCN's person. Given this and weighing all the factors, we find this not to be unreasonable.

### d. Communicating a Threat

While committing the robbery, EN stated to BCN, "Don't call the f***** cops or I'll come get you."[10] EN's verbal threat⸺for which the appellant was vicariously liable as a principal, *see* MCM, Part IV, ¶ 5.c(5)⸺was intended to ensure that EN was not caught by the police, as opposed to being a necessary part of the robbery. It was thus a sufficiently separate criminal act that, in concert with the remaining *Quiroz* factors, was not unreasonable for the Government to charge as a separate offense.

---

[10] Record at 262.

## III.  Factual Sufficiency

Lastly, the appellant claims his convictions for robbery and conspiracy to commit robbery are factually insufficient.  We disagree.

We review for factual sufficiency *de novo*.  *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007).  The test is whether, after weighing all the evidence in the record of trial and recognizing that we did not ourselves see or hear the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt.  *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also* Art. 66(c), UCMJ.

According to the appellant, the evidence supports that he held an honest, even if mistaken, belief that he had a greater possessory right to the items taken than BCN.  Thus, he reasons, the Government failed to prove that he specifically intended to deprive BCN of his property—a necessary element of both robbery and conspiracy to commit robbery.

The military judge properly instructed the members on the law regarding this assertion—the "claim of right" defense.  Yet they rejected it.  We too are convinced beyond a reasonable doubt that the appellant specifically intended to deprive BCN of his property and was not struggling under an honest but mistaken belief that he was merely retrieving his own property.  The appellant knowingly added BCN as an authorized user to credit cards, opened others with him as joint account holders, added him to a joint bank account, and gave him expensive gifts.  He even encouraged BCN to buy whatever he wanted.[11]  The protestation that a 32-year-old medical doctor and lieutenant commander in the Navy honestly believed that property purchased and given in these circumstances still belonged to him is simply not credible.

The record instead proves that the appellant's purpose was revenge, not retrieval of misappropriated property.  This was revealed, as a small example, by a text message where the appellant told his co-conspirator that "[i]f you take *his* stuff u [sic] can make it look like a mugging []."[12]

We are convinced of all elements of robbery and conspiracy to commit robbery beyond a reasonable doubt.

---

[11] *Id.* at 207.

[12] PE 3 (emphasis added).

**IV. Sentence Reassessment**

Because we set aside two specifications, we must determine whether we are able to reassess the appellant's sentence. We consider the following non-exclusive list of factors:

(1) Whether there has been a dramatic change in the sentencing landscape;

(2) Whether the appellant was sentenced by members or military judge alone;

(3) Whether the remaining offenses capture the gravamen of criminal conduct and, relatedly, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses; and,

(4) Whether the remaining offenses are of the type with which we have sufficient experience and familiarity to reliably determine what sentence would have been imposed at trial.

*United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013); *See also, United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006); *United States v. Buber*, 62 M.J. 476 (C.A.A.F. 2006); and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

Applying these principles, we find we can reassess the sentence. First, our findings reduce the maximum authorized confinement from 42 years and six months to 36 years and six months. The appellant was adjudged one year of confinement. This does not represent a dramatic change in the sentencing landscape. Second, the remaining offenses capture the gravamen of the appellant's criminal conduct. Third, our findings have no apparent effect on the relevance and admissibility of the evidence considered at trial. Finally, despite sentencing by members, we are able to reliably determine with confidence that even without the dismissed specifications, the appellant would have received the same sentence imposed at trial.

**Conclusion**

The findings of guilty to Specifications 1 and 3, Charge IV, are set aside and the specifications are dismissed with

prejudice.  The remaining findings of guilty and the sentence are affirmed.

Judge MARKS and Judge PALMER concur.

For the Court



R.H. TROIDL
Clerk of Court